# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 99-30183
Summary Calendar

_____

GARY WOOD,

Plaintiff-Appellant,

versus

MERIDIAN OIL PRODUCTION INC.; ET AL,

Defendants,

BURLINGTON RESOURCES OIL & GAS CO., formerly known as
Meridian Oil Production Ind., formerly known as Meridian Oil Inc.;
BURLINGTON RESOURCES OFFSHORE INC., formerly known
as Meridian Offshore Inc.; BURLINGTON RESOURCES
HYDROCARBONS INC., formerly known as Meridian Oil
Hydrocarbons Inc.; BURLINGTON RESOURCES MARKETING
INC., formerly known as Meridian Oil Marketing Inc.;
BURLINGTON RESOURCES TRADING INC., formerly known as
Meridian Oil Trading Inc.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(97-CV-1816)
_____

October 13, 1999

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Gary Wood ("Wood") sued Burlington Resources Oil & Gas Co. ("Burlington"), formerly

known as Meridian Oil Inc., seeking damages for injuries that he allegedly suffered while working

on one of Burlington's offshore platforms. At the time of the accident, Wood was nominally

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

employed as a co ntract production operator by Island Operating Company ("Island"). Island provided Wood's services to Burlington pursuant to a service contract. On his second day of work on Burlington's platform, Wood strained his back while assisting a Burlington crane operator replace a heavy grating. The district court granted summary judgment in favor of Burlington on the grounds that Wood was a "borrowed servant" and, consequently, Burlington was immune to suit under the exclusive remedy provision of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 905(a) (1986). Wood appeals, arguing that the contract between Burlington and Island creates a genuine issue of material fact precluding summary judgment. We affirm.

We review a district court's decision to grant a motion for summary judgment *de novo*, applying the same standard as the district court. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992). The issue of whether an employee is a borrowed servant is a question of law, and therefore also reviewed *de novo. See Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir. 1977).

In *Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir. 1969), we set out nine factors to be assessed in determining whether the borrowed employee doctrine applies. Since then, we have held that no single factor, or combination of them, is decisive. *See Brown v. Union Oil Co. of California,* 984 F.2d 674, 676 (5th Cir. 1993). We must, thus, apply the facts of the present case to the *Ruiz* factors.

(1) *Who had control?*

Wood's own deposition testimony established that he followed the instructions of the Burlington supervisor "to the letter." Similarly, the undisputed affidavits of Burlington supervisors establish that they issued all of Wood's work orders while in the field. Finally, the president of Island stated that Island temporarily turned over Wood to Burlington for purposes of all instruction and supervision.

(2) *Whose work was being performed?*

It is undisputed that Wood performed work solely for Burlington.

(4) *Did the employee acquiesce?*

The fourth factor focuses on whether the employee was aware of his work conditions and

chose to continue working in them.  *See Brown v. Union Oil,* 984 F.2d 674, 678 (5th Cir. 1993). While there is no evidence that Wood complained about his work conditions during his two days on the platform, two days does not seem a sufficient amount of time for Wood to have gathered a full appreciation for his new work conditions. Consequently, this factor is neutral.

(5) *Did the original employer terminate its relationship with the employee?*

The focus of the fifth factor is on the lending employer's relationship with the employee while he is working for the borrowing employer.  *See Capps v. N.L. Baroid- N.L. Industries*, 784 F.2d 615, 617 (5th Cir. 1986).  In this case, Wood testified that once he arrived at Burlington's platform, he had no contact with Island.

(6) *Who furnished the tools and place for performance?*

There is no dispute that Burlington provided Wood with the tools and place of performance.

(7) *Was a the new employment over a considerable length of time?*

Wood had been working for Burlington for only two days when he suffered his injury.  Where employment has been brief, we find that this factor cuts neither for or against finding borrowed employee status.  *See Billizon v. Conoco,* 993 F.2d 104, 106 (5th Cir. 1993); *Brown,* 984 F.2d at 679 (finding seventh factor neutral where period of employment was only one month); *Capps,* 784 F.2d at 618 ("In the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true.").

(8) *Who had the right to discharge the employee?*

While Island had the ultimate power to terminate Wood from its employment.  Burlington retained authority to terminate Wood's employment with Burlington.  On appeal, Wood argues that the right to terminate Wood from the platform is inconsequential since Wood would still be employed by Island.  We have previously rejected this argument and again find that since Burlington had the right to discharge Wood from his employment with Burlington, this factor favors a finding of borrowed employment.  *See Capps*, 784 F.2d at 618.

(9) *Who had the obligation to pay the employee?*

Wood testified that his time sheets were verified by a Burlington supervisor and then faxed to Island. Island would then pay Wood directly and bill Burlington at a higher rate for the work performed. This type of payment arrangement favors borrowed-employee status. *See Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988) (alleged borrowing employer had obligation to pay employee where they furnished the funds to nominal employer who paid employee directly); *see also Brown v. Union Oil Co. of Calif.*, 984 F.2d 674, 679 (5th Cir. 1993).

(3) *Was there an agreement or understanding between Island and Burlington?*

The third factor is the only one potentially weighing in Wood's favor. The service contract between Burlington and Island provided as follows:

> CONTRACTOR [Island] specifically agrees that all persons employed by CONTRACTOR in performing work covered by this Agreement, or by CONTRACTOR'S subcontractors, are not the employees of MERIDIEN [Burlington] for any purposes whatsoever . . ..

Wood contends that this provision precludes a finding of borrowed employment. Because the district court did not address the impact of this particular language on their decision, we analyze its effect for the first time on appeal.

The quoted provision is clearly relevant in determining whether Wood was a borrowed servant[1]. However, we have previously held that "parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988). The reality of the worksite and the manner in which parties carry out a contract can implicitly modify or waive an express provision in a written service contract. *See id.* at 1245. Here, the clear language of the provision seems to foreclose the possibility that Wood was a borrowed employee. However, the reality of life on the platform suggest that Island and Burlington came to a different

---

[1] Wood's argument that Burlington must first demonstrate that the contract provision is "null and void" is without merit. When assessing identical situations in the past, we have consistently addressed the impact of the provision on the borrowed servant analysis without questioning the validity of the contract. *See, e.g., West v. Kerr-McKee Corp.*, 765 F.2d 526 (5th Cir. 1985); *Billizon v. Conoco,* 993 F.2d 104 (5th Cir. 1993).

understanding. Wood ate and slept with Burlington employees, took his orders from Burlington supervisors, had his time sheets reviewed by Burlington, and never interacted with Island. Thus, the contract raises a factual dispute as to the meaning of the agreement between the two employers.

We are now faced with the same question addressed in *Billizon*: "[W]hether the existence of a contract provision purporting to prohibit borrowed-employee status makes the district court's summary judgment inappropriate, given that such a contract provision could create a factual dispute on the third factor if the other factors were disregarded." *Billizon v. Conoco*, 993 F.2d 104, 106 (5th Cir. 1993). When addressing this issue in the past we have held that, where all other factors clearly point to borrowed-servant status, summary judgment is appropriate. *See Billizon* 993 F.2d at 106 (granting summary judgment where seven factors favored borrowed-servant status and one was neutral); *Alexander v. Chevron, U.S.A.*, 806 F.2d 526 (5th Cir. 1986); *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977). Here, the first, second, fifth, sixth, eighth, and ninth factors favor our finding borrowed-employee status. Even if we find that the third factor favors Wood's position and exclude the fourth and seventh factors as neutral, the remaining factors provide sufficient evidence to find a borrowed servant relationship. We reached the same conclusion under nearly identical circumstances in *Billizon,* where seven factors favored borrowed employee status, one factor was neutral, and the third factor cut against finding a borrowed employee relationship. *See Billizon*, 993 F.2d at 106. Accordingly, we conclude that, as a matter of law, Wood was a borrowed employee.[2] The judgment of the district court is AFFIRMED.

---

[2] Wood further argues that, regardless of the outcome of the *Ruiz* analysis, Burlington cannot be immune from liability because it did not pay Wood's workers' compensation benefits. We have repeatedly rejected this argument. *See, e.g., Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1246-47 n.17 (5th Cir. 1988) (permitting tort immunity under the LHWCA to employer who did not fund employee's workers compensation benefits) ; *Capps v. N.L. Baroid-NL Indus., Inc.,* 784 F.2d 615, 619 (5th Cir. 1986) ( LHWCA does not abolish the borrowed employer doctrine); *Doucet v. Gulf Oil Corp.,* 783 F.2d 518, 522 (5th Cir. 1986); *West v. Kerr-McGee Corp.,* 765 F.2d 526, 530 (5th 1985).